UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:11CV-110-R
(Electronically Filed)


ATMOS GATHERING COMPANY, LLC
ATMOS ENERGY CORPORATION
ATMOS ENERGY MARKETING, LLC                                    PLAINTIFFS


VS.


RESOURCE ENERGY TECHNOLOGIES, LLC
SERVE:      John F. Charles
            108 Woodhill Road
            Bardstown, KY  40004

ROBERT E. THORPE
1811 Sullivan Lane
Bardstown, KY  40004

JOHN F. CHARLES
108 Woodhill Road
Bardstown, KY  40004                                           DEFENDANTS


**COMPLAINT**

       Come the Plaintiffs, Atmos Gathering Company, LLC (hereinafter "Atmos Gathering"),

Atmos Energy Corporation (hereinafter "Atmos Energy"), and Atmos Energy Marketing, LLC

(hereinafter "Atmos Marketing"), by counsel, and for their Complaint against the Defendants,

Resource Energy Technologies, LLC (hereinafter "RET"), Robert E. Thorpe (hereinafter

"Thorpe") and John F. Charles (hereinafter "Charles"), state as follows:

## Preamble

1.      This is an action by Atmos Gathering, Atmos Energy and Atmos Marketing against RET and its principals Thorpe and Charles, individually, for breach of contract, misrepresentation and indemnification.

## Parties

2.      Atmos Gathering is a Delaware limited liability company with its principal place of business at 5430 Lyndon B. Johnson Freeway, Suite 160, Dallas, Texas 75240.

3.      Atmos Energy is a Texas and Virginia corporation with its principal place of business at 5430 Lyndon B. Johnson Freeway, Suite 160, Dallas, Texas 75240.  Atmos Energy is a company affiliated with Atmos Gathering.

4.      Atmos Marketing is a Delaware limited liability company with its principal place of business at 13430 Northwest Freeway, Suite 700, Houston, Texas 77040.  Atmos Marketing is a company affiliated with Atmos Gathering.

5.      Defendant RET is a Kentucky limited liability company with its principal place of business in Bardstown, Kentucky.   Thorpe and Charles are the only two members of RET. RET's registered agent for the service of process is:   John F. Charles, 108 Woodhill Road, Bardstown, Kentucky 40004.

6.      Defendant Thorpe is a member of RET, resides at 1811 Sullivan Lane, Bardstown, Kentucky 40004, and is a citizen of the Commonwealth of Kentucky.

7.      Defendant Charles is a member of RET, resides at 108 Woodhill Road, Bardstown, Kentucky 40004, and is a citizen of the Commonwealth of Kentucky.

**Jurisdiction and Venue**

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds the sum or value of $75,000 and the controversy is between citizens of different states.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(a) as a substantial part of the events or omissions giving rise to these claims took place in Edmonson County, Kentucky.

**Factual Background**

*Thorpe and Charles Entities*

10.     Between 2001 and 2003, defendant Thorpe entered into oil and gas leases (hereinafter the "Leases") with certain landowners whose properties are located in northeast Edmonson County, Kentucky, in the Park City Gas Field.  When Thorpe entered into the Leases, he was doing business as a sole proprietor under the names Resource and Energy Technologies Company and Resource and Energy Technology Company.

11.     In or about early 2002, defendant Charles became Thorpe's business partner.

12.     Thorpe and Charles obtained money from investors to drill natural gas wells on the leased property.  Some of the wells produced natural gas.

13.     On November 14, 2003, Thorpe and Charles formed Park City Gas, LLC ("Park City"), a Kentucky limited liability company.  Thorpe and Charles are the only two members of Park City.  Thorpe assigned the Leases to Park City.  Park City, in turn, assigned to other entities (hereinafter the "Working Interest Owners") certain working interests in the Leases.

14.     Thorpe and Charles also formed defendant RET on November 14, 2003.  They are also the only two members of RET.  Park City and RET entered into an Operating Agreement, under which RET was the operator of the natural gas wells, on or about December 5, 2006.

*Project*

15.    In order to bring natural gas from the wells to market, Thorpe and Charles had to arrange for the gas to be gathered, compressed, treated to remove excess nitrogen and delivered to an interstate transmission pipeline.

16.    In November 2006, Thorpe and Charles, through RET, entered into a written contract with Atmos Gathering under which Atmos Gathering agreed to build a gathering system, to provide compression services, to deliver the gas from the wellheads to a treatment facility in Edmondson County, Kentucky, and to deliver the gas from the treatment facility to the interstate transmission pipeline.  Thorpe and Charles, through RET, also entered into a contract with Atmos Marketing under which Atmos Marketing agreed to purchase the gas at the delivery point on the interstate transmission pipeline.  RET entered into a separate contract with a third party, HNNG Development LLC (hereinafter "HNNG"), to design and build the treatment facility.  RET was responsible for operating the treatment facility.

17.    HNNG was not able to complete the treatment facility.  Atmos Gathering agreed to do so.  Atmos Gathering and RET executed two written amendments to their contract in early 2007.

18.    The parties' contract, as amended, provided for Atmos Gathering to recoup its multi-million dollar investment in the project from the proceeds of the sale of gas.  The contract specified that Atmos Marketing would serve as disbursing agent for the sale proceeds.  The contract also specifically set out the deductions that Atmos Marketing was to take from the sale proceeds for various services provided by Atmos Gathering and for recovery of Atmos Gathering's investment.  The contract provided for Atmos Marketing to pay any remaining balance of sale proceeds to RET.

19.     In May 2009, Atmos Gathering and RET entered into a contract that was, in effect, the third amendment to their agreement.  It superseded and replaced (subject to the survival of certain provisions) the prior agreements between the parties.  Among other things, that agreement provided that Atmos Gathering would purchase the gas from RET at the wellhead.

20.     At all times, Thorpe (the lessee under the Leases), Park City (Thorpe's assignee) and/or RET (the operator of the wells) retained responsibility for paying the landowners any royalties due to them under the Leases.

21.     The Park City Gas Field was in production from May 2008 to May 2009.

*Legal Proceedings*

22.     In April 2009, certain landowners filed a complaint for alleged nonpayment of royalties against RET, Atmos Gathering, Atmos Energy and Atmos Marketing in Edmondson Circuit Court, captioned *Honeycutt et al. v. Resource Energy Technologies, LLC et al.*, Civil Action No. 09-CI-00093.  Those landowners were:  Billy Joe Honeycutt, Tammy Honeycutt, James T. Bewley, Norma Bewley, Jackie McCombs, Patricia McCombs, Royce Houchin, Edward Parsley, Oraola Parsley and Deborah Parsley.

23.     RET filed a Chapter 11 bankruptcy petition in July 2009 in the United States Bankruptcy Court for the Western District of Kentucky (hereinafter the "Bankruptcy Court"), captioned *In Re: Resource Energy Technologies, LLC*, Case No. 09-33669.  RET then removed the landowners' claims in Civil Action No. 09-CI-00093 to the Bankruptcy Court.

24.     In September 2009, the same landowners filed another complaint in Edmondson Circuit Court against Thorpe, Atmos Gathering, Atmos Marketing and Atmos Energy, captioned *Honeycutt et al. v. Atmos Gathering Company, LLC et al.*, Civil Action No. 09-CI-00198.  The

landowners' claims included claims for nonpayment of royalties, forfeiture of the Leases, trespass, conversion, negligence and tortious interference with contract. RET was not named as a defendant in that action. The landowners later amended their complaint to add Park City as a defendant. Thorpe and Park City asserted crossclaims against Atmos Gathering, Atmos Energy and Atmos Marketing. Just before trial, the Edmondson Circuit Court permitted certain alleged Working Interest Owners to file their own intervening complaint against Atmos Gathering, Atmos Energy and Atmos Marketing.

25.     An additional landowner, Mollie Kersey, filed a virtually identical complaint in Edmondson Circuit Court. Ms. Kersey subsequently died, and the co-executors of her estate substituted as plaintiffs. That lawsuit, captioned *Dolores Jones and Richard D. Jones, Sr., as co-Executors of the Estate of Mollie Kersey v. Thorpe et al.*, Civil Action No. 10-CI-00040, was consolidated with Civil Action No. 09-CI-00198. Civil Action Nos. 09-CI-00198 and 10-CI-00040 are collectively referred to hereinafter as the "Edmondson County Lawsuits."

26.     RET voluntarily dismissed its bankruptcy petition in September 2010.

27.     The Edmondson County Lawsuits were tried to a jury in November and December 2010. On December 17, 2010, the jury returned a verdict in favor of the landowners, in favor of Thorpe, Park City and the alleged Working Interest Owners, and against Atmos Gathering, Atmos Energy and Atmos Marketing. The trial court entered judgment on the jury's verdict on December 20, 2010. Following post-judgment proceedings, the Edmondson Circuit Court entered its Second Amended Judgment (the "Judgment," attached hereto and incorporated herein as <u>Exhibit 1</u>) against Atmos Gathering, Atmos Energy and Atmos Marketing on March 30, 2011 for a total of $28,454,210. Atmos Gathering, Atmos Energy and Atmos Marketing

have appealed to the Kentucky Court of Appeals in Case No. 2011-CA-000601, which is now

pending.

*The Parties' Contracts*

28.     The contractual agreements between the parties are as follows:

A.     "**Agreement for Gathering, Treating and Purchase of
Natural Gas**," entered into effective May 11, 2009
between Atmos Gathering and RET.  This Agreement is
attached hereto and incorporated herein as <u>Exhibit 2</u>
(hereinafter the "May 2009 Agreement").  The May 2009
Agreement is signed:

"SELLER"

Resource Energy Technologies, LLC

By:  <u>s/ John F. Charles            </u>

Its:  <u>Managing Member-CEO         </u>

Date:  <u>14 May 2009              </u>

B.     "**Gas Gathering and Compression Agreement,**" entered
into as of November 20, 2006 between Atmos Gathering
and RET.   This Agreement is attached hereto and
incorporated herein as <u>Exhibit 3</u> (hereinafter the
"November 2006 Agreement").  The November 2006
Agreement is signed:

PRODUCER:

Resource Energy Technologies, LLC

By:     <u>s/Robert Thorpe           </u>

Its:     <u>President                </u>

C.     "**1st Amendment to Gas Gathering and Compression
Agreement,**" entered into effective January 1, 2007
between Atmos Gathering and RET.  This Agreement is
attached hereto and incorporated herein as <u>Exhibit 4</u>
(hereinafter the "1st Amendment").  The 1st Amendment is
signed:

RESOURCE ENERGY TECHNOLOGIES, LLC

By:      s/Robert Thorpe _____

Its:     President _____

D.     **"2nd Amendment to Gas Gathering and Compression Agreement,"** entered into effective April 1, 2007 between Atmos Gathering and RET.  This Agreement is attached hereto and incorporated herein as Exhibit 5 (hereinafter the "2nd Amendment").  The 2nd Amendment is signed:

RESOURCE ENERGY TECHNOLOGIES, LLC

By:  s/John F. Charles _____

Its:  _____ (Blank)

E.     **"Base Contract for Sale and Purchase of Natural Gas,"** entered into as of November 20, 2006 between Atmos Marketing and RET.  This Agreement is attached hereto and incorporated herein as Exhibit 6 (hereinafter the "Gas Purchase Agreement").  The Gas Purchase Agreement is signed:

RESOURCE ENERGY TECHNOLOGIES, LLC ("Party B")

By:  s/Robert Thorpe _____

Name:  Robert Thorpe

Title:   President

29.     The May 2009 Agreement is in effect the third amendment to the November 2006 Agreement.  The May 2009 Agreement (Exhibit 2) supersedes and replaces – subject to the survival of certain provisions – the November 2006 Agreement, the 1st Amendment and the 2nd Amendment between the parties (Exhibits 3, 4 and 5).  The November 2006 Agreement, the 1st Amendment and the 2nd Amendment are sometimes collectively referred to in the May 2009 Agreement and in this Complaint as the "**Prior Gathering Agreement**."

30.     During the negotiations culminating in the execution of each of the contractual agreements between the parties, Thorpe and Charles, the sole members of RET, were the only persons representing and participating in the negotiations on RET's behalf.

31.     RET and Park City did not enter into a written Operating Agreement regarding operation of the wells until December 5, 2006, after RET had already entered into the Prior Gathering Agreement with Atmos Gathering and the Gas Purchase Agreement with Atmos Marketing.  A copy of the Operating Agreement is attached hereto and incorporated herein as Exhibit 7.  Thorpe executed the Operating Agreement on behalf of both Park City and RET.

*May 2009 Agreement*

32.     Effective May 11, 2009, RET and Atmos Gathering entered into the May 2009 Agreement (Exhibit 2).  Thorpe and Charles, the only members of RET, actively negotiated the May 2009 Agreement, which was executed on RET's behalf by "John F. Charles, RET's Managing Member-CEO."

33.     The May 2009 Agreement (Exhibit 2) specifically provides that Atmos Gathering and affiliated companies (*i.e.*, Atmos Energy and Atmos Marketing) shall be indemnified and held harmless from and against any and all losses, claims and causes of action of every kind and character, including but not limited to judgments, attorney's fees, legal expenses and court costs incurred in defense of same.  Section 13, subparagraph (g), of the May 2009 Agreement specifically provides in pertinent part:

> 13.     General Representations, Warranties and Indemnification
> In addition to the other representations and warranties in this Agreement, or any Exhibit, each party, as to itself only, represents and warrants that: …
>
> **(g)   [RET] AGREES TO PROTECT, DEFEND, INDEMNIFY AND HOLD [ATMOS GATHERING], ITS DIRECTORS,   OFFICERS,   MEMBERS,   MANAGERS,**

**EMPLOYEES, AGENTS, ASSIGNS AND AFFILIATED COMPANIES FREE AND HARMLESS FROM AND AGAINST ANY AND ALL LOSSES, CLAIMS, LIENS, DEMANDS AND CAUSES OF ACTION OF EVERY KIND AND CHARACTER, INCLUDING, BUT NOT LIMITED TO, THE AMOUNTS OF JUDGMENTS, PENALTIES, INTEREST, COURT COSTS, INVESTIGATION EXPENSES AND COSTS AND LEGAL FEES INCURRED BY [ATMOS GATHERING], ITS DIRECTORS, OFFICERS, MEMBERS, MANAGERS, EMPLOYEES, AGENTS, ASSIGNS AND AFFILIATED COMPANIES IN DEFENSE OF SAME ARISING IN FAVOR OF ANY GOVERNMENTAL AGENCIES, THIRD PARTIES, CONTRACTORS OR SUB CONTRACTORS OR ON ACCOUNT OF TAXES, CLAIMS, LIENS, DEBTS, PERSONAL INJURIES, DEATH OR DAMAGES TO PROPERTY, AND ALL OTHER CLAIMS OR DEMANDS OF EVERY CHARACTER OCCURING OR IN ANYWISE ARISING OUT OF [RET's] OR ITS CONTRACTORS' OR SUB CONTRACTORS' NEGLIGENCE OR WILLFUL MISCONDUCT.**

(Emphasis in original.)

34.     In the negotiation and execution of the May 2009 Agreement (<u>Exhibit 2</u>), Charles and Thorpe represented, individually and as members of RET, and RET also expressly warranted, that RET owned or controlled or had the right to tender for delivery and sale to Atmos Gathering 100% of the gas dedicated to Atmos Gathering under the Agreement by RET.   RET also agreed that it would pay all royalties and other payments of whatever kind and nature in respect to the production of the gas delivered.   Specifically, Paragraph 14 of the Agreement provides in pertinent part:

14.     <u>[RET]'s Representations and Warranties</u> **[RET] represents and warrants to [Atmos Gathering]:**

(a)     **That [RET] owns, controls or has the right to tender for delivery and sale to [Atmos Gathering] one hundred (100%) percent of the Gas dedicated to [Atmos Gathering] hereunder by [RET].** [RET] warrants, and agrees to defend title to production delivered hereunder and the right of [Atmos Gathering] to sell same.   **[RET] further warrants that all such production is**

**delivered free and clear of** all liens, encumbrances, and **adverse claims**, including liens to secure payment of taxes. **[RET]** shall bear the economic burdens of, and except as may be otherwise herein provided, **shall pay, all royalties**, overriding royalties, production payments and other payments and settlements of whatsoever kind and nature **due in respect of production delivered hereunder or the proceeds from the sale thereof under [RET's] leases** and other contracts of record or otherwise binding on [RET], as well as settlements with all other persons having any interest in production delivered hereunder, **and [RET] agrees to indemnify and defend and save [Atmos Gathering] harmless from all claims, suits, actions, debts, accounts, damages, costs, losses, attorneys' fees and expenses arising out of adverse claims of any and all persons to or against said production.**

(b) That **the leases and easements** and any other documents **to which [RET] is party** as lessee or grantee respectively and which relate to the acreage and production dedicated under this Agreement **are sufficient to and confer upon [RET], among other things, the right to lay, maintain and operate the Gathering Line and other facilities contemplated by this Agreement in, over and through the properties of the lessor** or grantor respectively **and to partially assign the same to [Atmos Gathering] for the limited purpose of laying, maintaining and operating the Gathering Line and related facilities** in, over and through such properties and the right to grant to [Atmos Gathering] any lien or privilege with respect to the acreage and production dedicated under this Agreement as herein provided.

(c) … **[RET] SHALL DEFEND AND INDEMNIFY [ATMOS GATHERING],** AND ITS OFFICERS, DIRECTORS, EMPLOYEES, MEMBERS, MANAGERS, AGENTS AND ASSIGNS (COLLECTIVELY THE "BUYER INDEMNITEES") **AND SAVE THEM HARMLESS FROM ALL SUITS,** ACTIONS, DEBTS, ACCOUNTS, DAMAGES, COSTS, LOSSES **AND EXPENSES ARISING … OUT OF ADVERSE CLAIMS,** WHETHER MERITORIOUS OR NOT, **OF ANY AND ALL PERSONS RELATING** TO OWNERSHIP OF SAID GAS OR **TO ROYALTIES,** OVERRIDING ROYALTIES, TAXES, LICENSE FEES, OR CHARGES THEREON, OR RELATING TO ANY APPLICABLE OIL AND GAS LEASES AND OIL AND GAS EASEMENTS OR SIMILAR DOCUMENTS, HOWEVER STYLED, TO WHICH [RET] IS PARTY AS LESSEE OR GRANTEE RESPECTIVELY, **INCLUDING**, BUT NOT LIMITED TO **CLAIMS WHICH**

> **RELATE TO** THE ACREAGE AND PRODUCTION DEDICATED UNDER THIS AGREEMENT AND THE RIGHT OF [RET] TO LAY, MAINTAIN AND OPERATE ITS FACILITIES IN, OVER AND THROUGH THE PROPERTIES OF THE LESSOR OR GRANTOR RESPECTIVELY AND **THE RIGHT OF [RET] TO CONVEY TO [ATMOS GATHERING] THE RIGHT TO LAY, MAINTAIN AND OPERATE THE GATHERING LINE** AND [CENTRAL DELIVERY POINT] FACILITIES IN, OVER AND THROUGH THE PROPERTIES OF THE LESSOR OR GRANTOR RESPECTIVELY RESULTING FROM ACTION OF, BY, THROUGH OR UNDER [RET]. **THE BUYER INDEMNITEES SHALL BE ENTITLED TO RECOVER ALL ATTORNEY'S FEES INCURRED AS A RESULT OF INVOLVEMENT IN ANY ACTION OR CLAIM** DESCRIBED HEREIN.

(Capitalization in original; boldface emphasis added.)

35.     Furthermore, under the May 2009 Agreement (<u>Exhibit 2</u>), RET agreed to pay or cause to be paid promptly all royalties required by the Leases and to indemnify and hold Atmos Gathering harmless for all loss, cost and expense including tax payments, penalty and interest, that Atmos Gathering may suffer as a result of RET's failure to pay royalties.  Section 21 of the May 2009 Agreement specifically provides in pertinent part:

> 21.   <u>Taxes and Royalty</u> … **[RET] further agrees to pay, or cause to be paid, when due, all royalties**, overriding royalties and payments out of production **required by [RET]'s leases** or by law to be paid with respect to the production and sale of Gas …. **[RET] agrees to make such … payments promptly and hereby agrees to indemnify and hold [Atmos Gathering] harmless from all loss, cost and expense**, including tax payments, penalty and interest, **[Atmos Gathering] may suffer as a result of … [RET]'s failure to pay royalties**, overriding royalties or payments out of production.

(Emphasis added.)

*Surviving Representations and Provisions*
*in Prior Gathering Agreement and Gas Purchase Agreement*

36.     The May 2009 Agreement superseded the Prior Gathering Agreement in the main;

however, certain provisions of the Prior Gathering Agreement survived.  Regarding survival, the

May 2009 Agreement (Exhibit 2) specifically provides in pertinent part, in its initial paragraph:

> This Agreement shall and does hereby supersede and replace that
> certain Gas Gathering and Compression Agreement, dated
> November 20, 2006, by and between [RET] and [Atmos
> Gathering], as amended by Amendment effective January 1, 2007
> and further amended by 2nd Amendment effective April 1, 2007
> (the "Prior Gathering Agreement"), which is, **subject to the
> survival of certain provisions thereof and as otherwise
> provided in Section 5**, terminated effective with the effectiveness
> of this 2009 Agreement.

(Emphasis added.)

37.     The May 2009 Agreement (Exhibit 2) further provides for survival of all

representations and warranties, as well as all provisions for defense, indemnity and holding the

other party harmless, in the Prior Gathering Agreement.  Section 5 of the May 2009 Agreement

specifically provides in pertinent part:

> 5.  Survival of Certain Provision of the Prior Gathering Agreement
>
> Notwithstanding the stated intent and agreement of [Atmos
> Gathering] and [RET] that the Prior Gathering Agreement be
> terminated and superseded by this Agreement effective as of the
> Effective Date, **[Atmos Gathering] and [RET] expressly agree
> that all of the representations and warranties made by one
> party to the other pursuant to provisions of the Prior
> Gathering Agreement as well as all provisions of the Prior
> Gathering Agreement pursuant to which one party provided a
> defense and/or indemnification to the other party or agreed to
> hold the other party harmless**, including provisions limiting the
> same, **shall survive** the termination of the Prior Gathering
> Agreement indefinitely.

(Emphasis added.)

November 2006 Agreement

38.     On November 20, 2006, RET and Atmos Gathering entered into the November 2006 Agreement (Exhibit 3).  Thorpe and Charles, the only members of RET, actively negotiated the November 2006 Agreement, which was executed on RET's behalf by "Robert Thorpe, President."

39.     In the negotiations culminating in the November 2006 Agreement (Exhibit 3), Thorpe and Charles represented to Atmos Gathering that RET owned, controlled and had the right to tender 100% of the gas it would give to Atmos Gathering for transport and that RET had the right to lay pipelines over leased acreage RET controlled.  Section 3.2 of the November 2006 Agreement specifically provides:

> 3.2     [RET]'s Representation.
>
> [RET] represents and warrants to [Atmos Gathering]:
>
> (a)     **That [RET] owns, controls, or has the right to tender for delivery 100% of [RET]'s gas.**
>
> (b)     **That the Oil and Gas Leases and Oil and Gas Easements** to which [RET] is party as Lessee or Grantee respectively and which relate to the acreage and production dedicated under this Agreement **confer upon [RET]**, among other things, **the right to lay, maintain and operate the Gathering System in, over and through the properties** of the Lessor or Grantor respectively **and to partially assign the same to [Atmos Gathering] for the limited purpose of laying, maintaining and operating the Gathering System** in, over and through such properties and the right to grant to [Atmos Gathering] any lien or privilege with respect to the acreage and production dedicated under this Agreement as herein provided.

(Emphasis added.)

40.     In the November 2006 Agreement (Exhibit 3), RET also agreed to defend, indemnify and save Atmos Gathering harmless for all claims, suits, including attorney's fees, damages, royalties, etc. relating to gas produced and easement rights.  Specifically, the General

Terms and Conditions attached as Exhibit B to the November 2006 Agreement provide as follows, at section 4:

    4.  REPRESENTATIONS, WARRANTIES AND COVENANTS

    4.1  <u>Warranty of Title and Assignability of the Right to Lay, Operate and Maintain the Gathering System on Land of [RET]'s Lessors and Grantors and Covenant to Defend.</u>  [RET] hereby warrants title to the Gas delivered hereunder and [RET]'s right to deliver the same to [Atmos Gathering], or market said Gas free from all liens and adverse claims…. **[RET] SHALL DEFEND AND INDEMNIFY [ATMOS GATHERING] AND SAVE IT HARMLESS FROM ALL SUITS, ACTIONS, DEBTS, ACCOUNTS, DAMAGES, COSTS, LOSSES AND EXPENSES ARISING FROM OR OUT OF ADVERSE CLAIMS, WHETHER MERITORIOUS OR NOT, OF ANY AND ALL PERSONS RELATING TO OWNERSHIP OF SAID GAS OR TO ROYALTIES**, OVERRIDING ROYALTIES, TAXES, LICENSE FEES, OR CHARGES THEREON, **OR RELATING TO THE OIL AND GAS LEASES AND OIL AND GAS EASEMENTS TO WHICH [RET] IS PARTY** AS LESSEE OR GRANTEE RESPECTIVELY, INCLUDING, BUT NOT LIMITED TO CLAIMS WHICH RELATE TO THE ACREAGE AND PRODUCTION DEDICATED UNDER THIS AGREEMENT **AND THE RIGHT OF [RET] TO CONVEY TO [ATMOS GATHERING] THE RIGHT TO LAY, MAINTAIN AND OPERATE THE GATHERING SYSTEM IN, OVER AND THROUGH THE PROPERTIES** OF THE LESSOR OR GRANTOR RESPECTIVELY, RESULTING FROM ACTIONS OF, BY, THROUGH OR UNDER [RET]. **[ATMOS GATHERING] SHALL BE ENTITLED TO RECOVER ALL ATTORNEY'S FEES INCURRED AS A RESULT OF ITS INVOLVEMENT IN ANY ACTION OR CLAIM DESCRIBED HEREIN.**

(Capitalization and underlining in original; boldface emphasis added.)

    41.    The General Terms and Conditions of the November 2006 Agreement (Exhibit B to <u>Exhibit 3</u>) also provide that RET has the obligation to pay all royalties to the landowners. Those General Terms and Conditions further provide that RET will indemnify and hold Atmos Gathering, its affiliates, etc., harmless from all charges, penalties, costs and expenses of

whatever kind or nature arising from RET's failure to make such payments and direct Atmos Marketing as the disbursing agent to make the specific disbursements set forth in the Agreement.

Specifically, Section 10.6 of the General Terms and Conditions provides:

> 10.  BILLING PERIOD, STATEMENTS, and PAYMENT
> …
> 10.6   [Atmos Marketing] as disbursing agent and Netting. **The parties** acknowledge and agree that they **have designated [Atmos Marketing] as their respective disbursing agent for purposes of making specific disbursements as set forth herein.** Monthly, **[Atmos Marketing] shall prioritize and make disbursements, from the amount then due [RET]** from [Atmos Marketing] for Gas purchased under the Gas Purchase Agreement, in the following manner;  1) to [Atmos Gathering], for the amounts [RET] owes [Atmos Gathering] as set forth in this Agreement, including, but not limited to, the Gathering Fees as set forth in Section 5 of this Agreement and any other amounts due by [RET] to [Atmos Gathering] including but not limited to compression as set forth in this agreement, then;  2) HNNG, the amount due from [RET] to HNNG for that same time period, under the Agreement between [RET] and HNNG, then;  3) to [RET]  for actual compression and Gas Plant operating costs incurred by [RET], which include rental, utilities, maintenance and labor, then;  4) to [RET]  for an amount of $2000 per month per month for pumper services related to the Gas Plant and [Atmos Gathering]'s compression, then;  5) to [Atmos Gathering], for the escrow amount as set forth in paragraph 10.2 above. **If after disbursing funds** to [Atmos Gathering], HNNG and [RET] **as set forth herein, any funds remain, they shall be paid by [Atmos Marketing] to [RET].  It shall be the obligation of [RET]** to cause proper settlement and accounting to be made and **to make distribution of proceeds to all owners of interest in the proceeds from the sale of [RET's] Gas** delivered to [Atmos Marketing] under the Gas Purchase Agreement.   **[RET] shall indemnify and hold [Atmos Gathering], its Affiliates**, and their respective employees, officers, directors, agents and representatives **harmless from any and all charges, penalties, costs and expenses of whatever kind or nature arising from [RET's] failure to pay such payments, including costs and expenses of any litigation and reasonable attorneys' fees** associated therewith.

(Emphasis added.)

42.     Atmos Gathering agreed to provide compression of RET's gas, and RET agreed to reimburse and pay Atmos Gathering for all its costs associated with Atmos Gathering's compression of the gas.  Specifically, the November 2006 Agreement (<u>Exhibit 3</u>) provides, at Section 4.3:

> 4.3 <u>Compression</u>.
>
> **[Atmos Gathering] shall provide compression on behalf of [RET] and [RET] shall reimburse to [Atmos Gathering] all costs of compression** including but not limited to rent, maintenance, repairs, compression equipment, compression services provided by third parties, warranty agreements, insurance, operating agreements, electricity and fuel.  **Such costs will be invoiced to [RET] as incurred by [Atmos Gathering].**  In the event [Atmos Gathering] purchases compression, all costs thereof shall be borne by [RET] and [Atmos Gathering] shall invoice [RET] one twenty-fourth of all costs of such compression and net such invoiced amount against revenue each Month until 120% of such cost has been recovered….

(Emphasis added.)

<u>1st Amendment</u>

43.     Effective January 1, 2007, RET and Atmos Gathering entered into the 1st Amendment (<u>Exhibit 4</u>).  Thorpe and Charles, the only members of RET, actively negotiated the 1st Amendment, which was executed on RET's behalf by "Robert Thorpe, President."

44.     In the 1st Amendment (<u>Exhibit 4</u>), the parties amended Section 4.3 of the November 2006 Agreement to specifically provide as follows:

> Section 4.3 Compression of the Agreement is hereby amended to read as follows:
>
> "4.3 Compression.
>
> **[Atmos Gathering] shall provide inlet and plant compression on behalf of [RET] and [RET] will reimburse to [Atmos Gathering] all costs of such compression** including but not limited to rent, maintenance, repairs, compression equipment,

compression services provided by third parties, warranty agreements, insurance, operating agreements, electricity and fuel. **Such costs shall be deducted, as incurred, by [Atmos Gathering] or its disbursing agent [Atmos Marketing] from [RET's] proceeds…."**

(Emphasis added.)

<u>2nd Amendment</u>

45.     Effective April 1, 2007, RET and Atmos Gathering entered into the 2nd Amendment (<u>Exhibit 5</u>).  Thorpe and Charles, the only members of RET, actively negotiated the 2nd Amendment, which was executed on RET's behalf by "John F. Charles."

46.     In the 2nd Amendment (<u>Exhibit 5</u>), the parties further amended Section 4.3 of the November 2006 Agreement to specifically provide that Atmos Gathering would pay all costs related to electricity, compression and land (referred to as "ECL Costs") and that those costs would be deducted by the disbursing agent (*i.e.*, Atmos Marketing) from distributions or payments to RET.  The 2nd Amendment specifically provided:

> Section 4.3 Compression of the Agreement is hereby deleted in its entirety and replace with the following:
>
> "4.3.  Plant and Compression Site.
>
> **[Atmos Gathering] shall purchase, provide and own all plant compression and electrical equipment necessary to facilitate electric service at the HNNG Treating Facility and shall acquire land for the plant and compression site at the HNNG Treating Facility and [RET] will reimburse to [Atmos Gathering],** in addition to the fees described in Paragraph 5.1 below, **all costs related to such electrical equipment, compression and land** ("ECL Costs") including but not limited to rent, maintenance, repairs, equipment, services provided by third parties, warranty agreements, insurance, operating agreements, electricity and fuel.  Such costs shall be allocated to an account ("ECL Account") separate from initial system costs and deducted, as described herein, by [Atmos Gathering] or [Atmos Marketing] from [RET]'s distributions…."

(Emphasis added.)

47.     In the 2nd Amendment (<u>Exhibit 5</u>), RET and Atmos Gathering also amended Section 10.6 of the November 2006 Agreement.  In that amendment, they agreed and directed the disbursing agent (*i.e.*, Atmos Marketing) to make distributions from the amount due RET for gas purchased under the Gas Purchasing Agreement in the order set out below.  Section 10.6, as amended, continued to provide that RET had the obligation to pay all royalties to the landowners and that RET would indemnify and hold Atmos Gathering, its affiliates, etc., harmless from all charges, penalties, costs and expenses of whatever kind or nature arising from RET's failure to make such payments.  Specifically, the 2nd Amendment provided in pertinent part:

> Section 10.6  [Atmos Marketing] as disbursing agent and Netting. of Exhibit B to the Agreement is hereby deleted in its entirety and replaced with the following:
>
> "Section 10.6     [Atmos Marketing]  as Disbursing Agent and Netting.  **The parties  acknowledge and agree that they have designated [Atmos Marketing] as their respective disbursing agent for purpose of making specific disbursements as set forth herein.**  Monthly, **[Atmos Marketing] shall prioritize and make disbursements, from the amount then due [RET] from [Atmos Marketing] for Gas purchased** under the Gas Purchase Agreement, in the following manner:  1) to [Atmos Gathering], for the amounts [RET] owes [Atmos Gathering] as set forth in this Agreement, including, but not limited to, the Gathering Fees as set forth in Section 5 of this Agreement, the ECL Installments as set forth in Section 4.3 of this Agreement and any other amounts due [Atmos Gathering] by [RET]  under this Agreement, then;  2) to HNNG, the amount due from [RET] to HNNG for that same time period, under the Agreement between [RET] and HNNG, then;  3) to [RET] for actual compression and Gas Plant operating costs incurred by [RET], which include rental, utilities, maintenance and labor, provided however, labor and maintenance costs shall refer to costs related to extraordinary events such as equipment failures and scheduled maintenance items which require more than eight hours labor and shall not include routine maintenance performed by [RET]'s full-time contract pumpers, then;  4) to [RET] for an amount of $2000 per month for pumper services related to the Gas Plant and [Atmos Gathering]'s  compression, then; 5) to [Atmos Gathering], for the escrow amount as set forth in paragraph 10.2 above.  **If after disbursing funds to [Atmos Gathering], HNNG**

and **[RET] as set forth herein, any funds remain, they shall be paid by [Atmos Marketing] to [RET]**.  **It shall be the obligation of [RET]** to cause proper settlement and accounting to be made and **to make distribution of proceeds to all owners of interest in the proceeds from the sale of [RET]'s Gas** delivered to [Atmos Marketing] under the Gas Purchase Agreement.  **[RET] shall indemnify and hold [Atmos Gathering], its Affiliates**, and their respective employees, officers, directors, agents and representatives **harmless from any and all charges, penalties, costs and expenses of whatever kind or nature arising from [RET]'s failure to pay such payments, including costs and expenses of any litigations and reasonable attorneys' fees** associated therewith."

(Emphasis added.)

Gas Purchase Agreement

48.     Effective November 20, 2006, RET and Atmos Marketing entered into the Gas Purchase Agreement (Exhibit 6).  Thorpe and Charles, the only members of RET, actively negotiated the Gas Purchase Agreement, which was executed on RET's behalf by "Robert Thorpe, President."

49.     The November 2006 Agreement (Exhibit 3) incorporates, as Exhibit C, a copy of the Gas Purchase Agreement entered into between Atmos Marketing and RET on November 20, 2006.

50.     Pursuant to the Gas Purchase Agreement, RET agreed to deliver and sell to Atmos Marketing up to 10,000 MMBtus per day of natural gas at the location where Atmos Gathering facilities intersected the facilities of the Texas Gas Pipeline near Park City, Kentucky.  The Gas Purchase Agreement further provided that Atmos Marketing's payments to RET for the gas shall be after all netting and deductions as provided in the special conditions to the Gas Purchase Agreement.  Specifically, the Gas Purchase Agreement provided, in pertinent part, at Page 10:

Special Conditions:

The **payments by [Atmos Marketing] will be after all netting and deductions** as set forth in the Gas Gathering and Compression Agreement dated November 20, 2006 by and between [RET] and [Atmos Gathering].

(Emphasis added.)

51.     Thorpe and Charles represented that RET had title to the gas to be sold and the right to convey the gas to Atmos Marketing.  RET warranted that RET had title to the gas to be sold and the right to convey the gas to Atmos Marketing.  Specifically, the Gas Purchase Agreement (Exhibit 6) between Atmos Marketing and RET provided in pertinent part:

SECTION 8.  TITLE, WARRANTY AND INDEMNITY
…
8.2     **[RET] warrants that it will have the right to convey and will transfer good and merchantable title to all Gas sold hereunder and delivered by it to [Atmos Marketing] free and clear of all liens, encumbrances, and claims**.…

8.3     **[RET] agrees to indemnify [Atmos Marketing] and save it harmless from all losses, liabilities or claims including reasonable attorneys' fees and costs of court** ("Claims") from any and all persons, **arising from or out of claims of title** … or other charges thereon which attach before title passes to [Atmos Marketing].

(Emphasis added.)

*Indebtedness Due From RET to Atmos Gathering*

52.     RET failed to reimburse and pay Atmos Gathering all amounts due under the Prior Gathering Arrgement, as well as other charges and expenses owed by RET to Atmos Gathering.  In the May 2009 Agreement (Exhibit 2), RET and Atmos Gathering specifically acknowledged and agreed that RET was indebted to Atmos Gathering in the amount of $591,365, plus interest.  The May 2009 Agreement specifically provides in pertinent part:

4.   <u>Gas Purchase and Price</u>

… **[RET] agrees and acknowledges that as of [May 11, 2009] [RET] owes [Atmos Gathering] $591,365.00 which amount shall accrue compounded interest** (on the outstanding principal plus accrued interest) from and after [May 11, 2009] at the rate of one percent (1%) per month (such indebtedness and all then accrued interest thereon is referred to herein as the "Receivable"). The Receivable shall be due in full, principal and interest, no later than May 1, 2012….

(Emphasis added.)

*Representations and Warranties by Defendants*

53.   In summary, Thorpe and Charles, members of RET, made the following representations and RET made the following express warranties to Atmos Gathering and/or Atmos Marketing in the course of negotiating and executing the Agreements referenced above:

A.   That RET owned, controlled or had the right to tender for delivery 100% of the gas produced pursuant to the terms of the aforementioned Agreements (*see, e.g.,* paragraphs 34, 39, 40 and 51 above).

B.   That RET would pay or cause to be paid when due all royalties required by RET's leases (*see, e.g.,* paragraphs 34, 35, 41 and 47 above).

C.   That RET owned, controlled or had the right under its leases to lay, maintain and operate a gas gathering system in, over and through the properties of the landowners and to partially assign same to Atmos Gathering (*see, e.g.,* paragraphs 34, 39 and 40 above).

54.   The Edmondson Circuit Court's entry of the Judgment (<u>Exhibit 1</u>) has established the following:

A.   That RET did not own, control or have the right to deliver 100% of the gas produced pursuant to the terms of the aforementioned Agreements.

B.     That RET had not paid or caused to be paid when due, all royalties required by RET's leases.

C.     That RET did not own, control or have the right under its leases lay, maintain and operate a gas gathering system in, over and through the properties of the landowners or to partially assign same to Atmos Gathering.

*Fees, Expenses and Costs Incurred by Plaintiffs*

55.     Plaintiffs have incurred very substantial attorney's fees, legal expenses and costs in defending the legal proceedings described above.  Those attorney's fees, legal expenses and costs exceed $1.5 million.  Because litigation is ongoing, Plaintiffs will continue to incur additional attorney's fees, legal expenses and costs.

56.     Plaintiffs were required to post a *supersedeas* bond in the amount of $36 million in order to stay enforcement of the Judgment pending appeal.  Plaintiffs have incurred and will continue to incur substantial costs, which exceed $300,000, to pay the bond premium.

57.     The Judgment (Exhibit 1) awards damages against Atmos Gathering, Atmos Energy and Atmos Marketing, jointly and severally, in the amount of $28,454,210.  To the extent the Judgment becomes final and Atmos Gathering, Atmos Energy and/or Atmos Marketing are required to satisfy it, they will incur a very substantial loss.

**COUNT I**
**Breach of Express Warranty**

58.     Plaintiffs Atmos Gathering, Atmos Marketing and Atmos Energy incorporate by reference all allegations previously made in this Complaint.

59.     RET made the express warranties set out in paragraph 53 above to Atmos Gathering and Atmos Marketing in the Agreements referenced above.

60.     The entry of the Judgment by the Edmonson Circuit Court has established that those express warranties were false.

61.     RET has therefore materially breached the May 2009 Agreement, the Prior Gathering Agreement and the Gas Purchase Agreement.

62.     RET's breach has caused damage to Plaintiffs in an amount that exceeds the jurisdictional minimum of this Court.

## COUNT II
## Misrepresentation

63.     Plaintiffs Atmos Gathering, Atmos Marketing and Atmos Energy incorporate by reference all allegations previously made in this Complaint.

64.     Thorpe and Charles, individually and as members of RET, made the representations set out in paragraph 53 above to Atmos Gathering and Atmos Marketing.

65.     The entry of the Judgment by the Edmonson Circuit Court has established that those representations were false.

66.     Thorpe and Charles made those false representations negligently and failed to exercise reasonable care or competence in making those representations.

67.     Thorpe and Charles made those false representations for the purpose of inducing Atmos Gathering and Atmos Energy to rely on those false representations.

68.     Atmos Gathering and Atmos Energy justifiably relied on those false representations to their detriment and damage by entering into contracts with RET based on the false representations made by Thorpe and Charles and by expending significant amounts of money investing in the gathering, compression and purchasing of gas from RET.

69.     As a result of Atmos Gathering and Atmos Marketing's justifiable reliance on the false representations made by Charles and Thorpe, Atmos Gathering and Atmos Marketing

expended significant amounts of money in the gathering, compression and purchasing of gas and were additionally found liable, along with Atmos Energy, in the Edmondson County Lawsuits, for conversion, trespass, tortious interference with contract and negligence.

70.     Thorpe and Charles's false representations have proximately caused damage to Atmos Gathering, Atmos Energy and Atmos Marketing in an amount that exceeds the jurisdictional minimum of this Court.

## COUNT III
## Contractual Indemnity

71.     Plaintiffs Atmos Gathering, Atmos Marketing and Atmos Energy incorporate by reference all allegations previously made in this Complaint.

72.     Under the May 2009 Agreement, the Prior Gathering Agreement and the Gas Purchase Agreement, RET agreed to indemnify and save Atmos Gathering, Atmos Energy and Atmos Marketing harmless from all suits, actions, accounts, damages, costs, losses and expenses arising from any breach of warranty by RET, whether such claims are meritorious or not, including attorney's fees, legal expenses and costs.

73.     Plaintiffs Atmos Gathering, Atmos Energy and Atmos Marketing are entitled to indemnity from RET for any final Judgment entered in by the Edmonson County Lawsuits and for all attorney's fees, legal expenses and costs incurred by Atmos Gathering, Atmos Energy and Atmos Marketing in defense of the Edmondson County Lawsuits and the other legal proceedings set out above.

74.     Plaintiffs Atmos Gathering, Atmos Energy and Atmos Marketing's attorney's fees, legal expenses and costs in the defense of such actions exceed $1.8 million and are continuing to increase.

## COUNT IV
## Common Law Indemnity

75.     Plaintiffs Atmos Gathering, Atmos Energy and Atmos Marketing incorporate by reference all allegations previously made in this Complaint.

76.     The Judgment entered in the Edmondson County Lawsuits determined that Atmos Gathering, Atmos Energy and Atmos Marketing entered onto the landowners' properties without the landowners' authority and took the landowners' gas without the landowners' authority. Thorpe, Charles and RET represented and warranted to Atmos Gathering and Atmos Marketing that RET had such authority and the authority to assign that right to Atmos Gathering, thereby entitling Atmos Gathering to enter upon the landowners' property to receive from RET the gas produced from wells on the landowners' property.  The Judgment also determined that Thorpe, Charles and RET failed to pay royalties to the landowners under the Leases.  Thorpe, Charles and RET represented and warranted that those royalties would be paid.  Thorpe, Charles and RET are, as a result of their actions and inactions, wholly responsible for all loss and damage incurred by Atmos Gathering, Atmos Energy and Atmos Marketing for any final judgment entered in the Edmondson County Lawsuits and for all attorney's fees, legal expenses and costs incurred by Atmos Gathering, Atmos Energy and Atmos Marketing in defense of such actions and the other legal proceedings set out above.  RET, therefore, is liable to Atmos Gathering, Atmos Energy and Atmos Marketing for common law indemnity.

## COUNT V
## Piercing RET's Corporate Veil

77.     Plaintiffs Atmos Gathering, Atmos Energy and Atmos Marketing incorporate by reference all allegations previously made in this Complaint.

78.     During the contract negotiations between RET and Atmos Gathering, Thorpe and Charles, as the sole two members of RET, negotiated all contracts, amendments and agreements with Atmos Gathering and misrepresented RET's ability to perform under the contracts, amendments and agreements.  Thorpe and Charles, as the sole managing members of RET and/or Park City, caused RET and/or Park City not to pay obligations owed to the landowners, plaintiffs in the Edmonson County Lawsuits, and to Atmos Gathering and Atmos Marketing, thereby causing judgment to be entered against Atmos Gathering, Atmos Energy and Atmos Marketing as above set forth, and thereby rendering Thorpe and Charles liable to Atmos Gathering, Atmos Energy and Atmos Marketing for the judgment rendered against it.

79.     To the extent that the representations made by Thorpe and Charles inducing Atmos Gathering and Atmos Marketing to enter into the Agreements were not true, as determined by the Judgment, Thorpe and Charles knew or should have known their representations to Atmos Gathering and Atmos Marketing were not true, thereby rendering Thorpe and Charles liable to Atmos Gathering, Atmos Energy and Atmos Marketing for the Judgment rendered against them.

80.     Thorpe and Charles did not carry out the provisions of the contracts with Atmos Gathering and Atmos Marketing that they had entered into as members of RET in order to benefit themselves for their own personal gain, and they concealed material facts thereby intending to gain personal benefit from RET.  As a result, the Judgment was entered against Atmos Gathering, Atmos Energy and Atmos Marketing as above set forth.

81.     As a result of their misrepresentations and Atmos Gathering and Atmos Marketing's reliance thereon, Thorpe and Charles are liable to Atmos Gathering and Atmos Marketing for the claims contained herein against RET.

82.     The facts and circumstances are such that adherence to the fact of separate existence of RET as a corporation, would under the circumstances, sanction a fraud or promote an injustice to **Atmos Gathering, Atmos Energy and Atmos Marketing**, thereby rendering Thorpe and Charles, as the sole members of RET personally liable to **Atmos Gathering, Atmos Energy and Atmos Marketing** for the damages sustained by them.

83.     The facts and circumstances are such that RET's business and affairs were conducted for the personal benefit and advantage of Thorpe and Charles, as they at all relevant times mentioned in this Complaint have exercised dominion and control over RET in such manner that RET was and is their alter ego.

84.     The facts and circumstances are such that Thorpe and Charles operated RET as an extension of themselves for their own personal benefit and have siphoned off the company's assets to the point where it has no means to satisfy a judgment in this action.

85.     The facts and circumstances are such that there is such a unity of ownership and interest that the separate personalities of Thorpe and Charles, on the one hand, and RET, on the other hand, ceased to exist, and adherence to the normal attributes of separate corporate existence would sanction a fraud or promote injustice by permitting Thorpe and Charles to personally benefit at the expense of creditors (including Atmos Gathering, Atmos Energy and Atmos Marketing), while escaping liability for their actions.

86.     As a result, Thorpe and Charles should also be held personally liable for the damages and other relief to which Atmos Gathering, Atmos Energy and Atmos Marketing are entitled in this action.

## COUNT VI
## Unjust Enrichment

87.     Plaintiffs Atmos Gathering, Atmos Energy and Atmos Marketing incorporate all allegations previously made in this Complaint.

88.     Thorpe and Charles are the sole members of RET and also the sole member managers of Park City.  Atmos Gathering, Atmos Energy and Atmos Marketing are entitled to a judgment indemnifying them for the Judgment to the extent that the Judgment benefits Park City, otherwise Thorpe and Charles would be unjustly enriched.

## COUNT VII
## Breach of Contract – Payment of $591,365 plus Interest

89.     Plaintiffs Atmos Gathering, Atmos Energy and Atmos Marketing incorporate by reference all allegations previously made in this Complaint.

90.     As set forth in Paragraph 52 above, RET acknowledged that as of May 11, 2009 it was indebted to Atmos Gathering in the amount of $591,365 which it agreed to pay no later than May 1, 2012.  Such unpaid indebtedness accrues compounded interest from and after May 11, 2009 at the rate of 1% per month.

91.     RET has breached May 2009 Agreement in other respects and by other acts as set out above.

92.     Atmos Gathering is therefore entitled at this time to judgment against RET in the amount of $591,365 plus accrued interest from and after May 11, 2009.

## Prayer for Relief

WHEREFORE, the Plaintiffs Atmos Gathering, Atmos Energy and Atmos Marketing pray for entry of judgment against the Defendants, Resource Energy Technologies, LLC, Robert E. Thorpe, and John F. Charles, jointly and severally, as follows:

1)  For indemnification for any final judgment entered against them in the Edmondson County Lawsuits.

2)  For their attorney's fees, legal expenses and costs for defending the legal proceedings set out above, in an amount to be established at trial.

3)  For judgment in the amount of $591,365, plus accrued, compound interest from and after May 11, 2009 at the rate of 1% per month.

4)  For all costs, attorney's fees and pre- and post-judgment interest available under applicable law.

5)  For any and all other relief to which the Plaintiffs may be entitled.

### Jury Demand

Plaintiffs Atmos Gathering, Atmos Energy and Atmos Marketing pray for a trial by jury on all claims and allegations so triable.

> ENGLISH, LUCAS, PRIEST & OWSLEY, LLP
> 1101 College Street; P.O. Box 770
> Bowling Green, KY 42102-0770
> Telephone: (270) 781-6500
> Facsimile: (270) 782-7782
> E-Mail:  cenglish@elpolaw.com
>
> ATTORNEY FOR PLAINTIFFS ATMOS
> GATHERING COMPANY, LLC, ATMOS
> ENERGY CORPORATION and ATMOS
> ENERGY MARKETING, LLC
>
>
> *s/ Charles E. English*
> CHARLES E. ENGLISH
> CHARLES E. ENGLISH, JR.
> E. KENLY AMES

Dated:  July 11, 2011
986758