UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:11-CV-110

ATMOS GATHERING COMPANY, LLC
ATMOS ENERGY CORPORATION
ATMOS ENERGY MARKETING, LLC                                              PLAINTIFFS

V.

RESOURCE ENERGY TECHNOLOGIES, LLC
ROBERT THORPE
JOHN F. CHARLES                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendants' Motion to Dismiss (DN 8). Plaintiffs have filed their response (DN 9). Defendants have filed their reply (DN 10). Defendants have additionally filed a motion for a hearing on their motion to dismiss (DN 11). Plaintiffs have filed their response, and have opposed the motion for a hearing (DN 12). Because the Court finds a hearing unnecessary, Defendants' Motion for Hearing (DN 11) is DENIED. The motion to dismiss is now ripe for adjudication. For the following reasons, Defendants' Motion to Dismiss (DN 8) is DENIED.

## BACKGROUND[1]

The parties to this action have a somewhat complex litigation history, an understanding of which is necessary to a determination of this matter now before the Court. Between 2001 and 2003, Defendant Robert Thorpe entered into natural gas leases ("Leases") with several landowners in Edmonson County, Kentucky. When Thorpe entered into the Leases, he was doing business as a sole proprietor under the names Resource and Energy Technologies

---

[1] Because this is a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all of the allegations in Plaintiffs' complaint as true.

Company and Resource and Energy Technology Companies ("RETCO"). In 2002, Defendant John Charles became Thorpe's business partner. Thorpe and Charles drilled natural gas wells on the leased property. In November 2003, Thorpe and Charles formed Park City Gas, LLC ("Park City") and are Park City's only two members. Thorpe then assigned the Leases to Park City.

Thorpe and Charles also formed Defendant Resource Energy Technology, LLC ("RET") in November 2003. Thorpe and Charles are the only two members of RET. In December 2006, Park City and RET entered into a contract whereby RET would be the operator of the natural gas wells on the leased property. In November 2006, RET, through Thorpe and Charles, entered in a contract with Plaintiff Atmos Gathering under which Atmos Gathering agreed to build a gas gathering system, to provide gas compression services, to deliver the gas from the wellheads to a treatment facility, and to deliver the gas from the treatment facility to the interstate transmission pipeline ("Gas Gathering Contract"). RET, through Thorpe and Charles, also entered into a contract with Plaintiff Atmos Marketing, whereby Atmos Marketing would purchase the gas at the delivery point on the interstate transmission pipeline ("Gas Marketing Contract").

RET entered into a separate contract with non-party HNNG Development LLC to design and build the treatment facility. Because HNNG Development LLC was not able to complete the treatment facility, Atmos Gathering and RET executed two written amendments to their contract under which Atmos Gathering would complete the treatment facility. The parties' amended agreement provided for Atmos Gathering to recoup its investment in the project from the proceeds of the sale of the gas. Pursuant to the contract, Atmos Marketing would act as the disbursing agent for the sale proceeds, taking specified deductions from the sale proceeds for the various services provided by Atmos Gathering and for recovery of Atmos Gathering's

investment. Atmos Marketing was to pay any remaining sale proceeds to RET. A third amended contract provided that Atmos Gathering was to purchase the gas from RET at the wellhead.

Commercial gas production began on the leased property in May 2008. In April 2009, the landowners sued RET and the Atmos Gathering, Atmos Energy, and Atmos Marketing in Edmonson Circuit Court seeking to recover unpaid gas royalties ("*Honeycutt I*"). The complaint in *Honeycutt I* asserted claims for breach of the Lease agreements against RET, for a declaratory judgment as to the royalties due to the landowners, and for an accounting from RET and the Atmos entities (collectively "Atmos"). Atmos asserted a cross-claim against RET for indemnification pursuant to its contract with RET and common law. RET asserted a counter-claim against the plaintiff landowners for interfering with the operation of its gas wells.

In July 2009, RET filed a voluntary petition for Chapter 11 Bankruptcy in the United States Bankruptcy Court for the Western District of Kentucky. *Honeycutt I* was then removed to the Bankruptcy Court where it became an adversary proceeding. In November 2009, the plaintiff landowners in *Honeycutt I* and RET agreed to dismiss all claims without prejudice. The plaintiff landowners also moved to dismiss their claim against Atmos for an accounting. Because Atmos's cross-claim against RET was the only remaining claim in *Honeycutt I*, Atmos moved to dismiss that claim. The claim was dismissed without prejudice.

In September 2009, while RET was in bankruptcy proceedings, the landowners filed another lawsuit in Edmonson Circuit Court against Thorpe d/b/a RETCO and the Atmos entities ("*Honeycutt II*"). The complaint in *Honeycutt II* asserted various tort claims against Thorpe and Atmos, including fraud, conversion, trespass, and negligence. Park City, who was later added as a defendant in *Honeycutt II*, asserted cross-claims against Atmos for apportionment, negligence, intentional interference with contractual relationships, and fraud. Atmos then asserted cross-

3

claims against Thorpe and Park City for common law indemnity, contribution, and apportionment.[2]

Additionally, Atmos filed a proof of claim in RET's bankruptcy proceeding for indemnity, contribution, apportionment, and breach of contract. Atmos's motion for relief from the automatic stay was denied by the Bankruptcy Court. After Atmos appealed the denial to the United States District Court, but before the appeal was decided, RET moved to voluntarily dismiss its bankruptcy proceeding because it was unable to propose a confirmable reorganization plan. RET's bankruptcy proceeding was thereafter closed on September 29, 2010.

The trial in *Honeycutt II* began on November 12, 2010. After a fourteen-day trial, the jury found the following: (1) RET was the implied agent of Atmos for purposes of paying royalties to the landowners; (2) Atmos was liable for failing to pay royalties to the landowners; (3) Atmos converted gas from the landowners; (4) Atmos negligently failed to exercise reasonable care in its business transactions and failed to enforce its code of conduct; (5) Atmos intentionally interfered with the contractual relationship between the landowners and Thorpe/Park City by either causing the landowners to terminate the Leases or causing royalties not to be paid to the landowners; (6) Atmos charged excessive post-production expenses back against the landowners' royalties; (7) Atmos defrauded Thorpe/Park City and the Landowners; and (8) Atmos trespassed on the property of the landowners. Finally, the jury apportioned 100% of the fault to Atmos and 0% to Thorpe d/b/a RETCO and Park City. After post-judgment motions, the trial court entered judgment for the landowners, Thorpe and Park City in the amount of $28,454,210.

---

[2] Atmos maintains that it filed cross-claims against Park City because Park City's cross-claim complaint contained an inaccurate allegation that the agreement between RET and Atmos had been assigned to Park City.

Atmos then filed this action against RET, Thorpe, and Charles in July 2011. In its complaint, Atmos asserts claims against RET for Breach of Express Warranty, Misrepresentation, Contractual Indemnity, Common Law Indemnity, and Breach of Contract. Atmos's complaint also asserts an unjust enrichment claim against Thorpe and Charles, based on their status as sole members of RET and Park City, and seeks to pierce the veil of RET to hold Thorpe and Charles liable for the claims asserted against RET. Defendants then filed this motion to dismiss, claiming that Atmos's claims are barred by claim preclusion and issue preclusion. Defendants also assert that Atmos's claims were compulsory counterclaims that were required to be asserted in *Honeycutt II*.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id.*

## DISCUSSION

Defendants ultimately contend that this lawsuit is an attempt to re-litigate *Honeycutt II*. To that extent, Defendants argue that Atmos's claims and issues were fully heard and adjudicated by the Edmonson Circuit Court. Defendants also contend that any of Atmos's claims or issues that were not heard in *Honeycutt II* should have been raised in that prior litigation and are thus barred.

The Full Faith and Credit Act requires federal courts to give preclusive effect to state court judgments whenever state courts themselves would do so. 28 U.S.C. § 1738. The Kentucky Supreme Court has described the res judicata doctrine as follows:

> The doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.

*Yeoman v. Commonwealth*, 983 S.W.2d 459, 464 (Ky.1998) (quoting 46 Am.Jur.2d *Judgments* § 514). The doctrine of *res judicata* contains two kinds of preclusion: claim preclusion and issue preclusion. *Id.* at 464-65. The Supreme Court, in *Brown v. Felson*, cautioned that "[b]ecause res judicata may govern grounds and defenses not previously litigated . . . it blockades unexplored paths that may lead to the truth . . . . It therefore is to be invoked only after careful inquiry." 442 U.S. 127, 132 (1979).

As an initial matter, *Honeycutt I* was not an adjudication on the merits. All claims by all parties were dismissed without prejudice. Therefore, *Honeycutt I* cannot operate as *res judicata*. *See Yocom v. Hayden*, 566 S.W.2d 776 (Ky. App. 1978). Accordingly, the Court will limit its discussion to the preclusive effects of *Honeycutt II*, if any, on the current litigation.

I. **Whether Atmos's Claims are Barred by Claim Preclusion**

"Claim preclusion is the doctrine by which a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or raising a new defense to defeat a prior judgment." *Mitchell v. Chapman,* 343 F.3d 811, 819 (6th Cir.2003). "It precludes not only relitigating a claim previously adjudicated; it also precludes litigating a claim or defense that should have been raised, but was not, in the prior suit." *Id.* The Kentucky Supreme Court has stated that:

> For claim preclusion to bar further litigation, certain elements must be present. First, there must be identity of the parties. Second, there must be identity of the causes of action. Third, the action must have been resolved on the merits. The rule that issues which have been once litigated cannot be the subject matter of a later action is not only salutary, but necessary to the speedy and efficient administration of justice.

*Yeoman*, 983 S.W.2d at 464-65 (citing *Newman v. Newman,* Ky., 451 S.W.2d 417, 419 (1970)).

### a. Identity of the Parties

The "identity of the parties" requirement for the application of claim preclusion to Atmos's claims is not met in this case. RET, the primary defendant in this case, and Charles were not parties to *Honeycutt II*. Although Thorpe was a party in *Honeycutt II*, the claims against him in that action were not based on his capacity as a principal member of RET as they are in this current action. Instead, in *Honeycutt II*, Thorpe was sued in his individual capacity based upon the leases he entered into with the landowners via his sole proprietorship, RETCO. Despite these facts, Defendants argue that because Atmos claims "that RET, Thorpe, and Charles are one and the same" in the complaint, it follows that RET and Charles were parties in the previous litigation. This argument is without merit. RET and Charles were not parties in *Honeycutt II* and Atmos's allegations in this action do not serve to retroactively make RET and Charles parties to that previous litigation. Further, the defendants in this action cannot be considered privies of Thorpe in *Honeycutt II* because Thorpe did not represent the interests of

7

RET or Charles in the previous action.  *See* Am. Jur. Judgements § 582.  Thus, there is no identity of the parties.

    **b.  Identity of the Causes of Action**

Even if the "identity of parties" requirement was met, claim preclusion would still not apply to bar Atmos's claims because the "identity of the causes of action" requirement is not met.  "The key inquiry in deciding whether the lawsuits concern the same controversy is whether they arise from the same transactional nucleus of facts."  *Yeoman*, 983 S.W.2d at 465.  However, "the rule does not necessarily bar a subsequent suit on matters which were not germane to, implied in or essentially connected with the actual issues in the case.  Nor does the rule apply to a cause of action before it accrues."  *Coomer v. CSX Transportation, Inc.*, 319 S.W.3d 366, 372 (Ky. 2010) (internal quotations omitted).

Defendants assert that the claims in this action and the claims in *Honeycutt II* both stem from the Edmonson Leases and gas production in the Park City Field.  However, Defendants' generalization of the claims and facts presented here and in *Honeycutt II* is far too broad.  In *Honeycutt II*, the claims asserted by the landowners against the defendants were for failure to pay the royalties due under the Leases, conversion, trespass, fraud, and intentional interference with contractual relationships. Also in that action, Park City asserted claims against Atmos for negligence, intentional interference with contractual relationships, and fraud.[3]   These claims, which focused on Atmos's actions as they related to the plaintiff landowners and the failure to

---

[3] Park City, mistakenly stating that the Gas Gathering Contract between RET and Atmos was assigned to it, also asserted a cross-claim against Atmos for apportionment.  Atmos thereafter asserted a cross-claim against Park City and Thorpe (in his individual capacity), for indemnity, contribution, and apportionment.  However, RET never assigned the contract to Park City and so such claims were never litigated between Atmos and Park City or Thorpe.

pay the royalties, did not arise out of the same transactional nucleus of facts as the claims asserted in this action.

Here, Atmos's claims against Defendants are based on the agreements between RET and Atmos. An adjudication of these claims will focus on the terms of the contracts between RET and Atmos, whether or not RET's actions constitute a breach of the contract, the representations of RET, and whether or not the facts warrant piercing RET's corporate veil. Although Defendants claim that these contracts were a central issue in *Honeycutt II*, it remains that the causes of action asserted in the previous litigation did not arise from these contracts. The claims asserted here do not stem from the same transactional nucleus of facts as the claims asserted in *Honeycutt II*.

Finally, Atmos's claims against RET are not claims which should have been litigated in the previous action. RET was not a party to *Honeycutt II*. Because Thorpe and Park City were not parties to the contracts between RET and Atmos, Atmos could not have previously litigated these affirmative contractual claims. *See Bryan Bros. Packing Co. v. Garrard*, 386 S.W.2d 469, 472 (Ky. 1965). Further, if Atmos were to have brought its claims against RET in the previous action, such claims would have been third-party claims. Pursuant to Kentucky Rule of Civil Procedure 14.01, a party may move for leave to assert a third-party complaint against another who is or may be liable to it for all or part of the plaintiff's claims. Thus, Atmos was not required to assert its third-party claims but may pursue an independent action against the potential third-party defendant, RET. *See* 6 Kentucky Practice (6th ed.) at 356.

As a result, the rights and liabilities between Atmos and RET were not, nor were they required to be, determined by "an existing final judgment rendered upon the merits" in the previous action. *Yeoman*, 983 S.W.2d at 464; *see Buis v. Elliot*, 142 S.W.3d 137, 141 (Ky. 2004)

(holding that a plaintiff's claims in a subsequent action for indemnification, breach of contract, and unjust enrichment against a co-defendant in the previous action were not barred by claim preclusion or issue preclusion). Accordingly, Atmos's claims are not barred by claim preclusion.

## II. Whether Atmos's Claims are Barred by Issue Preclusion

Collateral Estoppel, or issue preclusion, "'refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.'" *Cockrel v. Shelby County School Dist.,* 270 F.3d 1036, 1046 (6th Cir.2001)(citing *Barnes v. McDowell,* 848 F.2d 725, 728 n. 5 (6th Cir.1988)). "Kentucky courts give preclusive effect to factual findings in a previous proceeding 'only as to matters which were necessarily involved and determined in the former action,' as opposed 'to matters which were immaterial or unessential to the determination of the prior action or which were not necessary to uphold the judgment.'" *Id.* (quoting *Barnes* at 730-31). Issue preclusion does not require absolute identity of the parties, but merely requires that the issue of fact or law have been actually litigated and determined by a final decision or judgment on the merits, that the determination have been essential to the decision or judgment, and that the party against whom issue preclusion is urged have had a full and fair opportunity to litigate the issue. *Yeoman,* 983 S.W.2d at 465 (citing Restatement (2d) of Judgments § 27 (1982)); *see also Moore v. Commonwealth,* 954 S.W.2d 317, 319 (Ky.1997); *Revenue Cabinet v. Samani,* 757 S.W.2d 199, 202 (Ky.App.1988) (quoting Restatement (2d) of Judgments § 27 (1980)).

Defendants contend that the claims raised by Atmos in this litigation will require relitigation of the following issues: (1) whether Atmos's conduct is excused by RET's conduct based upon the agreements between Atmos and RET, (2) the application of the alleged agreements to Atmos's conduct, (3) the master-servant relationship between Atmos and RET,

and (4) the respective responsibilities and apportionment between Atmos and Thorpe, Charles, and their business entities as it relates to the landowner royalties.  Defendants also claim that, the Edmonson County jury's findings mandate a conclusion that Atmos's claims for indemnification are impermissible under the law.  Atmos, in response, contends that collateral estoppel does not apply here because the issues Atmos had the opportunity to litigate in *Honeycutt II* are not the same as the issues in this action.

In order to determine the preclusive effect, if any, of the issues actually litigated and decided in *Honeycutt II*, the Court will individually examine the issues decided in that previous litigation and the issues raised in this litigation.

### a. The Jury Findings in *Honeycutt II*

The Court has reviewed the Jury Verdict in *Honeycutt II* to determine which issues were actually litigated and decided in that action.  The jury made the following findings:

1. RET was the implied agent of Atmos, and Atmos was therefore liable for RET's failure to tender funds to pay the royalties due to the landowners.

2. Atmos was liable to the landowners for conversion because (1) the plaintiffs were the owners of the gas; (2) the plaintiffs had possession of the gas or the right to possess it at the time of the conversion; (3) Atmos or its agent exercised dominion over the gas in a manner which denied the plaintiffs' rights to the gas and which was to Atmos's own use and benefit; and (4) that the plaintiff landowners suffered damage as a result.

3. Atmos was negligent as to the landowners in breaching its duty to exercise reasonable care in its business transactions to prevent damage to the property rights of the plaintiff landowners.  This duty included a duty to enforce Atmos's Code of Conduct.

4. Atmos was negligent as to Thorpe d/b/a RETCO and Park City in breaching its duty to exercise reasonable care in its business transactions to prevent damage to the property rights of Thorpe d/b/a RETCO and Park City.  This duty included a duty to enforce Atmos's Code of Conduct.

5. Atmos intentionally and improperly interfered with the contractual relationship between the plaintiff landowners and Robert Thorpe d/b/a

      RETCO by either causing the plaintiff landowners to terminate the existing lease contracts or preventing the continuation of the lease contracts through the handling of the gas revenue proceeds, including the taking of unreasonable post production expenses from the plaintiffs' royalties.

6. Atmos was not entitled to charge back the incurred post-production expenses against the plaintiffs' royalties because: (1) the incurred expenses were not post-production expenses; or (2) either the plaintiffs' lease agreements did not allow for the charge back of such expenses, or the plaintiffs were not informed of Atmos's intent to charge back such expenses and did not agree to such charges.

7. The expense deductions at issue were a substantial factor in preventing Park City and Thorpe d/b/a RETCO from paying the landowner royalties.[4]

8. Atmos was liable to Park City and Thorpe d/b/a RETCO for fraud in knowingly or recklessly making a material false misrepresentation to induce an action or inaction.

9. Atmos was liable to each plaintiff landowner for fraud in knowingly or recklessly making a material false misrepresentation to induce an action or inaction.

10. Atmos trespassed onto the plaintiff landowners' properties without the plaintiffs' consent and laid and constructed a gas gathering line.

11. Atmos acted with reckless disregard for the property rights of the plaintiff landowners and Park City and Thorpe d/b/a RETCO, or acted towards these parties with oppression, fraud, or malice.

12. Atmos was 100% at fault for the plaintiffs' damages and Thorpe d/b/a RETCO and Park City were 0% at fault.

Edmonson Circuit Court, Civil Action No. 09-CI-198, DN 9-26.

    **b. Claims Raised in this Action**

Next, the Court will examine the claims raised in this action to determine the preclusive effect, if any, of the issues actually litigated and decided in *Honeycutt II*.

<u>Breach of Express Warranty</u>

---

[4] This interrogatory instructed the jury that it may consider the Agreements between RET and Atmos.

Atmos alleges that, in the agreements between Atmos and RET, RET made the following express warranties: (1) that RET owned, controlled, or had the right to tender for delivery 100% of the gas produced pursuant to the agreements; (2) that RET would pay or cause to be paid when due all royalties required by RET's leases; and (3) that RET owned, controlled, or had the right under its leases to lay, maintain, and operate a gas gathering system in, over, and through the properties of the landowners and to partially assign the same rights to Atmos Gathering. Based upon the entry of judgment in Edmonson Circuit court, Atmos claims that RET breached these three express warranties and therefore materially breached the agreements.

None of the issues actually litigated and decided in *Honeycutt II* preclude Atmos from now bringing this breach of contract claim against RET. Although Defendants argue that Atmos asserted the existence of the contracts as a defense in *Honeycutt II*, whether or not RET made these express warranties and breached these express warranties was not actually litigated and decided in *Honeycutt II*. Atmos did not have the opportunity to actually litigate these issues in *Honeycutt II*. Accordingly, Atmos's breach of express warranty claim is not barred by issue preclusion.

Misrepresentation

Atmos next claims that Thorpe and Charles, individually and as members of RET, made the representations listed above. Atmos alleges that the Edmonson Circuit Court judgment established that these were false representations, and further alleges that they were made negligently for the purpose of inducing Atmos to rely on those representations. As a result, Atmos claims, it expended significant amounts of money in the gathering, compression, and purchasing of gas and were additionally found liable in the Edmonson County lawsuits.

None of the issues actually litigated and decided in *Honeycutt II* preclude Atmos from now bringing this misrepresentation claim against RET. The issue of whether RET, through Charles and Thorpe, knowingly or recklessly made false representations to Atmos was not actually litigated and decided by the jury in the previous litigation. Additionally, whether or not Atmos relied upon the alleged misrepresentations and thereby suffered damages as a result was not actually litigated and decided in *Honeycutt II*. Accordingly, Atmos's claim for misrepresentation is not barred by issue preclusion.

Contractual Indemnity

Atmos claims that in the agreements between Atmos and RET, RET agreed to indemnify and save Atmos harmless from all suits, actions, accounts, damages, costs, losses and expenses arising from any breach of warranty by RET, whether such claims are meritorious or not. This issue was not actually litigated and decided in *Honeycutt II*. However, Defendants argue that the issue of indemnification was previously adjudicated because of the jury's finding that Atmos was negligent and that RET was the implied agent of Atmos. Therefore, Defendants argue, enforcement of the indemnification provisions of the agreements between RET and Atmos would be against public policy. This argument is not well taken. First, the cases cited by Defendants do not support their claim that the indemnification provision between RET and Atmos is unenforceable. In fact, the Kentucky Supreme Court has noted that "there is no published Kentucky state case in which an exculpatory clause was invalidated when only property loss (as opposed to personal injury) occurred." *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644, 653 (Ky. 2007). Second, the jury's finding that RET was the implied agent of Atmos for purposes of paying the landowner royalties does not translate into a finding of inequity of bargaining power between the two entities at the time the contract was entered

14

into. Atmos did not have the opportunity to actually litigate the issue of RET's possible liability to it for contractual indemnification in *Honeycutt II*. Accordingly, Atmos's claim for contractual indemnity is not barred by issue preclusion.

Common Law Indemnity

Atmos claims that, because RET, Thorpe and Charles are wholly responsible for all loss and damage it incurred for any final judgment entered in the Edmonson County lawsuits, it is entitled to common law indemnity from RET. Defendants contend that this claim is barred by issue preclusion because the Edmonson County jury adjudicated fault and placed it all on Atmos. Although Atmos was found to be 100% at fault in *Honeycutt II* as compared to Park City and Thorpe d/b/a RETCO, the jury made no determination of the relative fault between Atmos and RET.

Furthermore, despite Defendants' argument to the contrary, the jury's finding that RET was the implied agent of Atmos does not necessarily work to dissolve any fault on the part of RET. As Defendant states in their Reply, a claim for common law indemnification arises "[w]here the party claiming indemnity has not been guilty of any fault except technically, or constructively, as where an innocent master was held to respond for the tort of his servant acting within the scope of his employment." *Deneger v. Hall Contracting Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). Thus, an agent may be liable to a principal that is held liable to another for the acts of the agent. The jury in *Honeycutt II* did not determine whether or not Atmos was an innocent master, as it did not determine any claims arising out of the agreements between Atmos and RET. Atmos did not have the opportunity to actually litigate the issue of RET's possible liability to it for common law indemnification in *Honeycutt II*. Accordingly, Atmos's claim for common law indemnification is not barred by issue preclusion.

Piercing Corporate Veil

Atmos next contends that, under the circumstances, this Court should disregard RET's corporate form and hold Thorpe and Charles liable for the claims against RET. In support of this claim, Atmos alleges that Thorpe and Charles, as the sole members of RET, negotiated all contracts, amendments and agreements with Atmos and misrepresented RET's ability to perform under the agreements. Atmos contends that RET's businesses and affairs were conducted for the personal benefit of Thorpe and Charles, as they have exercised dominion and control over RET in such a manner that RET was merely their alter ego. Atmos therefore argues that adherence to the separate existence of RET as a corporation would sanction a fraud or promote an injustice to Atmos.

It is undisputable that whether or not the facts warrant disregarding the corporate identity of RET was not litigated or decided in *Honeycutt II*. Because Atmos did not bring any claims against RET in *Honeycutt II*, Atmos did not have the opportunity to actually litigate the issue of whether RET's corporate veil should be pierced. Accordingly, Atmos's claim to pierce the corporate veil of RET is not barred by issue preclusion.

Unjust Enrichment

Atmos claims that it is entitled to a judgment indemnifying them for the Edmonson Circuit Court judgment to the extent that the judgment benefits Park City. Otherwise, Atmos contends, Thorpe and Charles, as the sole member managers of Park City, would be unjustly enriched. In order to prevail on a theory of unjust enrichment, a plaintiff must prove the following three elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of that benefit by defendant; and (3) inequitable retention of that benefit without payment for its value. *Guerin v. Fulkerson*, 354 S.W.3d 16, 165 (Ky. App. 2011).

Whether the judgment against Atmos in *Honeycutt II* benefited Thorpe and Charles at Atmos's expense, whether Thorpe and Charles appreciated that benefit, and whether retention of that benefit would be inequitable were not litigated and decided in *Honeycutt II*. Accordingly, Atmos's claim for unjust enrichment is not barred by issue preclusion.

Breach of Contract

Finally, Atmos alleges that as of May 11, 2009 RET was indebted to it in the amount of $591,365 which RET agreed to pay no later than May 1, 2012. Thus, Atmos asserts a breach of contract claim against RET. It is undisputable that the jury in *Honeycutt II* did not decide whether RET owed Atmos this amount under the contracts between them. Accordingly, Atmos's breach of contract claim is not barred by issue preclusion.

III. **Whether Atmos's Claims Were Compulsory Counterclaims**

Lastly, Defendants argue that Plaintiffs' claim were compulsory counterclaims which should have been made in the Edmonson Circuit Court action. Kentucky Rule of Civil Procedure 13.01 provides, in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Defendants contend that once Thorpe and Park City asserted cross-claims against Atmos in *Honeycutt I*I, Atmos was required to assert all of its counterclaims against Thorpe. However, Defendants' argument fails because the claim asserted in this action were not compulsory counterclaims in the previous action. As discussed above, Atmos's claims in this action did not arise out of the same transaction or occurrence that was the subject matter of Thorpe d/b/a RETCO's and Park City's cross-claims against Atmos in *Honeycutt II*. Instead, Atmos's claims

17

in this action arise out of the agreements between it and RET.  Accordingly, Atmos's claims were not compulsory counterclaims in *Honeycutt II* and were therefore not forfeited when Atmos did not bring them in that previous action.

## CONCLUSION

In sum, neither claim preclusion nor issue preclusion bars Atmos from bringing its claims of breach of express warranties, misrepresentation, contractual indemnification, common law indemnification, piercing the corporate veil of RET, unjust enrichment, and breach of contract.  These claims against RET have never been adjudicated, and Atmos was not required to bring them in the previous action.  Additionally, the trial court in *Honeycutt II* did not decide any issue between Atmos and RET that would work to bar Atmos's claims in this action.  Accordingly, IT IS HEREBY ORDERED that Defendants' motion to dismiss (DN 8) and motion for a hearing (DN 11) are DENIED.